## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

ALAN UNDERWOOD, et al.,

      Plaintiffs,

v.                                                           Case No. 5:01-cv-251/LAC

BRIDGESTONE/FIRESTONE, INC. et al.,

      Defendants.

_____/

## <u>ORDER ON SUMMARY JUDGMENT</u>

This cause is before the Court on cross-motions for summary judgment filed by Defendant Ford Motor Company ("Ford") and by Defendant/Cross Claimant River Bend Ford Mercury, Inc. ("River Bend"). This case was remanded to this Court following coordinated or consolidated pretrial proceedings in the Southern District of Indiana as part of MDL-1373, during which time a settlement was reached between the parties. The lone remaining matter in this case for which summary judgment is sought, is whether River Bend is entitled to attorney fees for undertaking its own defense in this case.

The Court has taken the matter under advisement and is now prepared to rule on the motions. For the reasons stated below, Defendant Ford's Motion is denied, and Defendant River Bend's motion is granted.

# I. BACKGROUND

The facts of this case are free from dispute.  Plaintiffs filed their complaint on September 25, 2001, bringing claims against Ford, River Bend and Bridgestone/Firestone on theories of negligence, fraud/misrepresentation and fraudulent concealment, based on an accident that occurred while one of the Plaintiffs was driving a Ford Explorer with Firestone tires.  By letter dated November 20, 2001, River Bend sent its initial request for legal representation to Ford as per its Dealer Sales and Service Agreement with Ford.  Ford responded on November 28, 2001, indicating that it was not required to defend River Bend in the lawsuit because there existed independent claims of negligence, misrepresentation and fraudulent concealment against River Bend, as well as claims against Bridgestone/Firestone related to alleged defects in the vehicle's tires.  However, Ford also indicated that if these independent claims were to be dismissed, Ford would then be obligated to defend the lawsuit from that point forward.  River Bend subsequently filed a cross claim against Ford demanding attorney fees.

Because Plaintiffs learned through the course of discovery that their claim against Bridgestone/Firestone was not viable, they filed a second amended complaint on April 30, 2002, which excluded Bridgestone/Firestone and all tire-related claims from the lawsuit. Then, on November 7, 2002, Plaintiffs voluntarily dismissed all independent claims of fraud, misrepresentation or negligence against River Bend.  Since the only remaining claims were those based on alleged manufacturing defects of the vehicle, Ford informed River Bend that

it would assume defense of the case from that point forward and forwarded a "Terms of Assumption of Defense Agreement" to that effect. However, because River Bend's position that it was entitled to legal representation during the entire lawsuit – which was not reflected in the "Terms of Assumption of Defense Agreement" – River Bend declined to enter the agreement. On February 14, 2003, a settlement was reached between Ford and Plaintiffs, which released River Bend from liability as well.

## II. DISCUSSION

River Bend claims it should have been represented by Ford during the entire lawsuit and therefore seeks attorney fees pursuant to its Dealer Sales and Service Agreement with Ford. The parties have predetermined the amount of the fees should fees be granted. As Section 33 of the Agreement stipulates that Michigan law is to apply to all related disputes under the Agreement, this Court will look to Michigan law as necessary in resolving any such disputes.

A contract of indemnity is to be construed in the manner of an ordinary contract – so as to effectuate the intentions of the parties. *See Ormsby v. Capital Welding, Inc.,* 660 N.W. 2d 730, 745 (Mich. Ct. App. 2002); *Gartside v. Young Men's Christian Ass'n*, 87 Mich. App. 335, 339, 274 N.W.2d 58 (1978). "In ascertaining the intentions of the parties, one must consider not only the language used in the contract, but also the situation of the parties and the circumstances surrounding the contract. Indemnity contracts are construed most strictly

against the party who drafts them, and against the party who is the indemnitee." *Giguere v. Detroit Edison Co.*, 114 Mich.App. 452, 456, 319 N.W.2d 334, 336 (Mich. App. 1982) (citing *Gartside, supra,* and *Fireman's Fund American Ins. Co. v. General Electric Co.*, 74 Mich.App. 318, 253 N.W.2d 748 (1977)).  Nonetheless, clear and unambiguous language in such a contract "will be enforced as written; courts will not interpret or rewrite the parties' contract." *Illinois Employers Ins. of Wausau v. Dragovich*, 139 Mich.App. 502, 507, 362 N.W.2d 767 (1984).

More directly, at issue before the Court is the degree to which the Agreement requires Ford to defend against lawsuits filed against River Bend.   The duty to defend against a lawsuit is separate from the duty to indemnify against any liability that may be subsequently imposed. *See Reurink Bros. Star Silo, Inc. v. Maryland Cas. Co.*, 131 Mich. App. 139, 142, 345 N.W.2d 659 , 660-61 (Mich. App. 1983); *Dochod v. Central Mutual Ins. Co.*, 81 Mich. App. 63, 67, 264 N.W.2d 122 (1978).   "The duty to defend is broader than the duty to indemnify and is properly invoked when claims are even arguably within coverage." *Polkow v. Citizens Ins. Co. of America*, 438 Mich. 174, 185, 476 N.W.2d 382, 386 (1991) (citing *Detroit Edison Co. v. Michigan Mutual Ins. Co.*, 102 Mich. App. 136, 142, 301 N.W.2d 832 (1980)).  To determine whether a duty to defend exists, courts should not merely focus on the pleadings but also on the actual bases for the injury. *Polkow, supra* (citing *Illinois Employers Ins. of Wausau v. Dragovich*, 139 Mich. App. 502, 507, 362 N.W.2d 767 (1984)); *see also Reurink Bros.*, 131 Mich. App. at 143, 345 N.W.2d at 661.  "[A]ny doubt pertaining to

application of the duty to defend is to be resolved in favor of the insured." *Polkow, supra*.

"The duty to defend extends to the defense of actions of the nature and kind covered by the policy, irrespective of what the ultimate finding may be." *Dochod*, 81 Mich. App. at 67, 264 N.W.2d at 124.

In relevant part, the Agreement states:

> 6.(k) Indemnification by the Company.  The Company shall defend, indemnify, hold harmless and protect the Dealer from any losses, damages or expense, including costs and attorney's fees, resulting from or related to lawsuits, complaints or claims commenced against the Dealer by third parties concerning:
>
> (1) Property damage to a COMPANY PRODUCT or bodily injury or property damage arising out of an occurrence caused solely by a "production defect" in that product (i.e., due to defective materials or workmanship utilized or performed at the factory, except for any "production defect" in tires and diesel engines made by others, provided, however, that the "production defect" could not have been discovered by the Dealer in the reasonable pre-delivery inspection of the VEHICLE, as recommended by the Company.[1]
>
> (2)  Property damage to a COMPANY PRODUCT or bodily injury or property damage arising out of an occurrence caused solely by a defect in the design of that product, except for a defect in the design of tires or diesel engines made by others.
>
> (3)  Any damage occurring to a new VEHICLE, and repaired by the Company (excluding removal and replacement

---

[1]  This provision is accurately quoted; there is no closing parenthesis.  It is arguable that this and other syntactical errors in the provision create some amount of ambiguity, but the Court does not find any such ambiguity to be fatal to the overall meaning of the provision as determined in this Order.  In any event, it would appear that the most sensible reading of the provision would be to place the closing parenthesis after the word "factory."

of an entire component with a like component where no welding, riveting or painting is involved), from the time the VEHICLE leaves the Company's assembly plant or warehouse to the time it is delivered to the Dealer's designated location, provided the Company failed to notify the Dealer in writing of such damage and repair in transit prior to delivery of the VEHICLE to the first retail customer.

In the event that any legal action arising out of any of these causes is brought against the Dealer, the Company shall undertake, at its sole expense, to defend said action on behalf of the Dealer when requested to do so by the Dealer, provided that the Dealer promptly notifies the Company in writing of the commencement of the action against the Dealer and cooperates fully in the defense of the action in such manner and to such extent as the Company may reasonably require . . . . Should the Company refuse to undertake the defense on behalf of the Dealer, or fail to undertake an adequate defense, the Dealer may conduct its own defense and the Company shall be liable for the cost of such defense, including reasonable attorney's fees, together with any verdict, judgment or settlement paid by the Dealer . . . .

Based upon a plain reading of this Agreement, the Court finds that Ford was under a duty to defend River Bend against the lawsuit from its inception. The foundation of the Agreement requires Ford to defend against "lawsuits . . . concerning . . . damage arising out of an occurrence caused solely by a 'production defect' in [a Ford product]" or "a defect in the design of that product." Ford was therefore obligated under the Agreement so long as the lawsuit "concerned" an "occurrence" which was caused solely by a "production defect." The "occurrence" in this case was certainly the automobile accident that Plaintiffs were involved in, and Ford does not contest that a "production defect" or "design defect" was allegedly involved.

Ford's argument is that the "occurrence" was not caused "solely" by the "production defect" because there were independent allegations against River Bend that it negligently failed to warn about the unsafe vehicle or made misrepresentations as to its safety.  Ford's position appears to be that, so long as there is some allegation of negligence (or some other level of culpability) on the part of dealer in River Bend's position, a production defect was not the sole cause of the accident.  To accept this position would effectively emasculate the duty to defend provision because there will always be such allegations of negligence, be they allegations of "active" or "passive" negligence.  In fact, taken to its logical extreme, Ford's position would result in no duty to defend because allegations of negligence by *Ford itself* would force the conclusion that the production defect was not the sole cause of the accident.[2]

Rather, a more cogent parsing of the provision would exclude from coverage claims in which the dealer in some manner contributed to the creation or perpetration of the defect, for instance by modifying the vehicle or performing faulty maintenance.  The Agreement provisions in fact lend support to this reading.  Subsection 6(k)(1) excludes from coverage production defects that could have been discovered by the dealer during reasonable pre-delivery inspection of the vehicle.  Subsection 6(k)(3) excludes from coverage certain repairs to the vehicle made by Ford but not reported to the dealer.  These are more finite, specific

---

[2] Moreover, Ford's reading of the Agreement terms would also conflict with subsection (4) of the Agreement, which provides coverage for "[p]ersonal injury or property damage arising solely out of a negligent or improper act of an employe [sic] of the Company."  Ford's reading would product this untenable result: Ford would be required to provide coverage when a production defect was the sole cause of the injury or when a negligent act by the company was the sole cause, but not when both worked in tandem to cause the injury.

limitations on coverage, designed to exclude production from coverage those defects that could be readily ascertained and ostensibly remedied by the dealer.

While the Agreement also provides an exception for "any 'production defect' in tires and diesel engines made by others," Bridgestone/Firestone's presence in the lawsuit did not relieve Ford of the duty to defend.   The exception for tire defects means only that coverage would not extend to that *particular species* of "production defect," but Ford retained the duty to defend against the lawsuit because it still involved only "production defects."   Had the complaint alleged *only* a tire defect, Ford would have had no duty to defend, but this was not the case.   Thus, Ford was required by the Agreement to defend the lawsuit as far as those production defects that were not tire related.   Moreover, Ford was required to defend against the entire lawsuit, because under Michigan law there remains a duty to defend the lawsuit despite the existence of other facts or claims that are not under coverage.   *See Reurink Bros.*, 131 Mich. App. at 142, 345 N.W.2d at 661; *Dochod*, 81 Mich. App. at 66, 264 N.W.2d at 123; *Space Conditioning, Inc. v. Insurance Co. of North America*, 294 F. Supp. 1290, 1293 (E.D. Mich. 1968).[3]

---

[3] As a final matter, the Court notes Ford's reliance on *Mel Clayton Ford v. Ford Motor Co.*, 104 Cal. App. 4th 46, 127 Cal. Rptr. 2d 759 (Cal. App. 2nd Dist. 2002), which involved a claim for attorney fees under the same Agreement as the instant case.  However, not only was *Mel Clayton Ford* decided under California state law, the facts of that case are readily distinguished in critical aspects.  In *Mel Clayton Ford* involved a settlement entered into by the dealer, which under California law created a presumption that dealer was at fault for the accident in question, which essentially changed the entire landscape for analysis of the case.

This Court therefore finds that Ford was required to defend this lawsuit on behalf of River Bend.  Because Ford did not do so, River Bend is contractually entitled to recover its attorney fees for its own defense of the lawsuit.

## III. Summary

The Court's ruling in this matter may be summarized as follows, and IT IS HEREBY ORDERED:

1.      Defendant Ford Motor Company's motion for summary judgment is **DENIED.**

2.      Defendant/Cross Claimant River Bend Ford Mercury's motion for summary judgment is **GRANTED.**

3.      Pursuant to Local Rule 54.1(C), the parties are directed to confer in good faith effort to settle the amount of attorney fees to be paid by Defendant Ford Motor Company.   Within twenty (20) days from the date of this Order, Defendant/Cross Claimant River Bend Ford Mercury shall report on the outcome of the conference(s).

**ORDERED** on this 27th day of October, 2006.

s/ *L. A. Collier*
_____
Lacey A. Collier
Senior United States District Judge